SARAH THOMPSON, a Minor, by and through her Mother and Next Friend, Barbara Thompson, *et al.*, Plaintiffs-Appellants, v. PALOS COMMUNITY HOSPITAL *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—90—3690

Opinion filed September 29, 1993.

Goldberg & Goldberg and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellants.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford and Gerald Haberkorn, of counsel), for appellee Palos Community Hospital.

JUSTICE GREIMAN delivered the opinion of the court:

In this medical negligence action alleging serious injuries sustained at birth by the minor plaintiff Sarah Thompson (Sarah), plaintiffs Barbara and John Thompson, the parents of Sarah, appeal a discovery order granting defendant Palos Community Hospital's motion to require Sarah to submit to an examination and tests of urine and blood under Supreme Court Rule 215 (134 Ill. 2d R. 215) and an order

holding plaintiffs' attorney (Barry Goldberg) in contempt for his refusal to have Sarah submit to the examinations.

On appeal plaintiffs assert that the trial court abused its discretion in ordering Sarah to submit to physical examinations requested by defendant Palos Community Hospital (Hospital) because the Hospital did not carry its requisite burden in demonstrating good cause for the examination and tests as required by Supreme Court Rule 215.

For the reasons which follow, we reverse the discovery order, vacate the contempt order, and remand this matter to the circuit court.

Sarah Thompson was born on February 20, 1985, and was delivered at defendant Hospital and attended by defendant Dr. Edward Ryan, who is not involved in the present appeal. Plaintiffs filed a complaint on February 20, 1987, alleging that during and after Sarah's birth, defendants acted negligently and their negligent conduct resulted in birth asphyxia (oxygen deprivation) and subsequent brain damage to Sarah. On May 6, 1987, a first amended complaint based on these events was filed.

The Hospital disputes the cause, not the existence, of Sarah's injuries and asserts that Sarah's injuries stem from genetic problems.

The Hospital filed a motion which requested in relevant part:

"3) For purposes of obtaining genetic kariotyping [sic] and metabolic analysis this Defendant [Hospital] requests that at the child's regular health care visit it be allowed to obtain a blood sample and a urine sample. ***

4) For purposes of a dysmorphological exam, this Defendant [Hospital] requests the opportunity, at its expense, to obtain professional photos of the child." (Emphasis in original.)

In response to the Hospital's motion to compel, plaintiffs asserted that the requested tests were unnecessary because such metabolic assessments had already been performed and the Hospital failed to meet the foundational requirements of Supreme Court Rule 215, which authorizes the physical examination of parties in any action where the physical condition of a party is in controversy. Plaintiffs contended that the Hospital failed to make the required affirmative showing of "good cause" that the requested procedures are necessary to the defense of the case and the Hospital's motion to compel was unsupported by affidavit and the information sought would be merely cumulative. Moreover, the Hospital made no showing that the examinations could be performed safely to the minor plaintiff and a minor is entitled to the special protection of the courts.

In its reply in support of its motion to compel testing, the Hospital contended that "[t]he relationship between genetic disturbances

and brain damage is well documented and commonly accepted." The Hospital also argued that its request for a Rule 215 examination was not overly invasive, was appropriate where a litigant puts his physical condition into issue, was not inconvenient for plaintiffs since the blood and urine samples could be obtained during any of Sarah's regularly scheduled doctor visits, and would be paid for by the Hospital.

On October 23, 1990, the trial court entered an order granting the Hospital's motion which stated in pertinent part:

"1. That the Minor-Plaintiff, SARAH THOMPSON, by and through her representatives shall be required to produce a blood sample and a urine sample for genetic karyotyping and metabolic analysis at the next opportunity for blood to be drawn during the course of her routine pediatric care;

2. That the Minor-Plaintiff shall be produced for full body photographs for the purposes of evaluation by a dysmorphologist."

On December 17, 1990, the trial court denied plaintiffs' motion to reconsider the October 23, 1990, order. In addition, the December order held plaintiffs' counsel (Barry Goldberg) in contempt for refusing to submit Sarah to the tests and imposed a $1 fine on Mr. Goldberg.

Plaintiffs then appealed both orders, *i.e.*, the discovery order of October 23, 1990, and the contempt order of December 17, 1990.

As a threshold matter, the Hospital contends that this court lacks jurisdiction to hear the merits of this case on the grounds that there is no actual justiciable controversy because the Hospital has agreed, in motions filed with this court subsequent to plaintiffs' appeal, to a reversal and remandment of the trial court's orders. In its motions which were filed with this court during the pendency of this appeal, the Hospital contended that (1) the contempt order is improper because it cited plaintiffs' counsel instead of Barbara Thompson as Sarah's guardian, and (2) the discovery order is defective because it is not sufficiently detailed.

The Hospital, however, acknowledged in its brief that this court has already considered and rejected these issues in our orders (entered on December 17, 1991, and April 10, 1992) denying the Hospital's motions.

On appeal, plaintiffs assert that the trial court abused its discretion in entering the discovery order because the Hospital failed to make an initial showing of good cause as required by Supreme Court Rule 215.

The Hospital contends that the substance of the discovery order is proper because plaintiffs failed to make an initial showing that the ex-

aminations in question are *prima facie* dangerous, citing as authority for such proposition *Harris v. Mercy Hospital* (1992), 231 Ill. App. 3d 105, 596 N.E.2d 160, *Stasiak v. Illinois Valley Community Hospital* (1992), 226 Ill. App. 3d 1075, 590 N.E.2d 974, and *Sarka v. Rush-Presbyterian-St. Luke's Medical Center* (1990), 207 Ill. App. 3d 587, 566 N.E.2d 301. We disagree.

■■ Supreme Court Rule 215(a) provides:

"In any action in which the physical or mental condition of a party or of a person in his custody or legal control is in controversy, the court, upon notice and for *good cause* shown on motion made within a reasonable time before the trial, may order the party to submit to a physical or mental examination ***." (Emphasis added.) 134 Ill. 2d R. 215(a).

The Illinois Supreme Court explained the purpose and requirements for Rule 215 as follows:

"Rule 215 is a rule of discovery, the purpose of which is to permit the discovery of facts which will assist the trier of fact to reach a correct determination of the issues before it. This rule does not permit unlimited and indiscriminate mental and physical examinations of persons but by its terms gives a trial court discretion to order such examinations only when certain requirements are met. The person sought to be examined must be a party (or a person in his custody or legal control), the physical or mental condition of that person must be in controversy, and *good cause* must be shown for the examination. Then, and only then, is discovery of that person's physical or mental condition authorized by this rule.

*** Rule 215 contemplates that the trial court in its discretion may order the physical or mental examination under appropriate conditions when *all* requirements of the rule have been met ***." (Emphasis added.) *In re Conservatorship of the Estate of Stevenson* (1970), 44 Ill. 2d 525, 529-30, 256 N.E.2d 766.

Generally a trial court has broad discretion in determining good cause under Rule 215. *In re Marriage of Kutchins* (1987), 157 Ill. App. 3d 384, 389, 510 N.E.2d 1300, citing *Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App. 3d 395, 401, 405 N.E.2d 418; *Crown v. Village of Elmwood Park* (1969), 118 Ill. App. 2d 278, 283, 255 N.E.2d 47 (the trial court's denial of a Rule 215(a) motion was not an abuse of discretion where the motion was untimely and "[n]o attempt was made by defendant to show good cause for making the physical examination").

However, the good cause limitation of Supreme Court Rule 215(a) must be carefully applied (*Stevenson,* 44 Ill. 2d at 529; *Kutchins,* 157 Ill. App. 3d at 388; see also *Eskandani v. Phillips* (1975), 61 Ill. 2d 183, 197, 334 N.E.2d 146), even though a trial court is afforded considerable discretion in determining whether a physical examination should be ordered under Rule 215(a), and its decision will not be reversed absent an abuse of that discretion (*In re Marriage of Cohen* (1989), 189 Ill. App. 3d 418, 423, 545 N.E.2d 362).

The good cause requirement specifically provided in Supreme Court Rule 215 and consistently applied in case law has not been abandoned in any way. Accordingly, a party moving for a physical examination under that rule bears the initial burden of establishing good cause for the requested examination. *Stevenson,* 44 Ill. 2d at 529.

The Hospital misplaces the burden of coming forward with evidence. Under the Hospital's theory, any Rule 215 movant could prevail without a showing of good cause and the motion defeated only by the nonmoving party showing that the examination would be dangerous. Such a limitation is neither authorized by Rule 215 nor compelled by the three cases (*Harris, Sarka,* and *Stasiak*) upon which the Hospital relies.

In neither *Harris, Sarka* nor *Stasiak* was the movant excused from showing good cause for the requested tests. Instead, the three decisions addressed the safety of the proposed examinations because the nonmoving party objected to the tests on the grounds that they would subject the minor plaintiff to a potential risk of physical harm.

In *Harris* the trial court directed the defendant movant to submit an affidavit establishing good cause under Supreme Court Rule 215 before the blood test might be authorized. (*Harris,* 231 Ill. App. 3d at 106.) Only after the defendant submitted such an affidavit by a board-certified pediatrician did the trial court enter an order for the requested blood test. *Harris,* 231 Ill. App. 3d at 106.

In *Sarka,* the defendants filed a motion to compel the minor plaintiff to submit to a computed axial tomography (CT) scan under sedation. The defendants based their request upon the deposition of a doctor who had previously performed a CT scan on the minor plaintiff and who testified that the CT scan images evidenced a congenital malformation of the brain. The doctor, however, stated that the CT scan images were of poor quality since the minor plaintiff had not been sedated during the procedure and, therefore, another CT scan should be performed while the minor plaintiff was under sedation. The plaintiff objected on the grounds that the sedative would pose a serious risk of harm. Based on this information, the trial court re-

quired the defendants to show "by affidavit or by competent expert witnesses that the procedure can be done safely." (*Sarka*, 207 Ill. App. 3d at 592.) The issue of safety was never reached by the trial court in *Sarka* until after the defendants had established good cause for the examination by deposition testimony of a doctor and previous test results.

Subsequently in *Sarka*, the trial court granted the defendants' Rule 215 motion and the plaintiff refused to comply. On appeal, this court was faced with the "question of whether a court is within its discretion to order a physical examination which may injure the plaintiff" (*Sarka*, 207 Ill. App. 3d at 595) and the issue of "whether the risk posed by the Rule 215 examination outweighs the benefit to justice" (*Sarka*, 207 Ill. App. 3d at 598). In contrast, the case at bar presents the issue of whether the Hospital established good cause for the requested examinations of the minor plaintiff.

Similarly in *Stasiak*, the third district noted that "[c]onflicting medical affidavits were submitted in support of and in opposition to the motion" for a magnetic resonance imaging (MRI) test because the safety of the minor plaintiff "undergoing an MRI necessarily under sedation" was disputed by the medical experts. (*Stasiak*, 226 Ill. App. 3d at 1075.) The *Stasiak* court vacated the Rule 215 order and found:

> "Here, there is no showing that the medical records of the plaintiff which are in the possession of the defendant are incomplete or that the MRI will provide additional necessary evidence. It is also clear that there is no evidence before this court to the effect that the MRI results will resolve any major legal issue." *Stasiak*, 226 Ill. App. 3d at 1080.

In the present case, plaintiffs objected to the Hospital's motion on several grounds, including the lack of necessity to perform the tests, the cumulative nature of the test results in light of previous examinations of the minor plaintiff, the possible danger to the minor plaintiff, the special protection afforded to minors by the courts, and the failure to support the motion by affidavit.

■ The Hospital answered these objections with the bare assertion that "[t]he relationship between genetic disturbances and brain damage is well documented and commonly accepted." While the truthfulness of this statement may or may not be undisputed in the medical field, Supreme Court Rule 215 is a legal discovery device which requires a moving party to establish good cause for any requested medical examination. A mere conclusory statement made by defendant's counsel fails to demonstrate sufficient good cause to satisfy the requirements of the rule.

We find that the Hospital failed to meet its burden of establishing good cause for the requested examinations. Accordingly, we reverse the discovery order, vacate the contempt order entered against plaintiffs' counsel, and remand this case to the circuit court.

Reversed in part; vacated in part and remanded.

TULLY, P.J., and RIZZI, J., concur.